1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MICHAEL JAMES GRIMES,                 No.  2:12-cv-0937 AC P (TEMP)

12              Plaintiff,

13        v.                               ORDER AND

14   RICHARD RIVERMAN et al.,              FINDINGS AND RECOMMENDATIONS

15              Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under

18   42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment brought

19   pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff has filed an opposition to

20   the motion, and defendants have filed a reply.

21                              **BACKGROUND**

22        Plaintiff is proceeding on a third amended complaint against defendants Dr. Soltanian and

23   Dr. Naseer.  Plaintiff alleges that defendant Dr. Soltanian inaccurately wrote in plaintiff's medical

24   file that he refused all outside medical treatment, resulting in plaintiff having "many heart

25   attacks" and requiring emergency heart surgery in January 2011.  In addition, plaintiff alleges that

26   defendant Dr. Naseer refused to allow him to see his cardiologist, resulting in plaintiff needing

27   another emergency heart surgery in April 2011.  Plaintiff also alleges that he needed to wear a

28   colostomy bag for a year and a half and asked defendant Dr. Naseer to transfer him to cell

                                           1

1   housing because inmates in the gym were harassing him over the smell of the bag.  According to

2   plaintiff, defendant Dr. Naseer refused to transfer him, and subsequently, one of plaintiff's fellow

3   inmates gave him a "beat down" because of the smell of the bag.  Finally, plaintiff summarily

4   alleges that he did not receive adequate medical care from defendants for his diarrhea, colostomy

5   bag, lower back, and feet.  (Third Am. Compl. at 3-8.)

6        At screening, then-Magistrate Judge Dale A. Drozd found that plaintiff's third amended

7   complaint appeared to state a cognizable claim for relief against defendants Dr. Soltanian and Dr.

8   Naseer for inadequate medical care in violation of the Eighth Amendment.  (Doc. No. 37)  Judge

9   Drozd further found that plaintiff's complaint appeared to state a cognizable claim against

10  defendant Dr. Naseer for failure to protect in violation of the Eighth Amendment.  (Id.)  The court

11  ordered service of the complaint on defendants, and on July 2, 2014, defendants filed an answer

12  to the complaint.  (Doc. Nos. 37 & 45)  On April 28, 2015, defendants filed the pending motion

13  for summary judgment on the grounds that: (1) defendants were not deliberately indifferent to

14  plaintiff's medical needs; (2) defendant Dr. Naseer did not fail to protect plaintiff; (3) plaintiff

15  failed to exhaust his available administrative remedies with respect to his claims against

16  defendant Dr. Soltanian; and (4) defendants are entitled to qualified immunity.  (Doc. No. 67)

17  **SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

18       Summary judgment is appropriate when the moving party "shows that there is no genuine

19  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

20  Civ. P. 56(a).  In summary judgment practice, the moving party "initially bears the burden of

21  proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation,

22  627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

23  The moving party may accomplish this by "citing to particular parts of materials in the record,

24  including depositions, documents, electronically store information, affidavits or declarations,

25  stipulations (including those made for purposes of the motion only), admission, interrogatory

26  answers, or other materials" or by showing that such materials "do not establish the absence or

27  presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

28  support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.). See also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, . . ., is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

3

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

## OTHER APPLICABLE LEGAL STANDARDS

I.      Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations

4

1  concerning the involvement of official personnel in civil rights violations are not sufficient.  See

2  Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

3      II.     The Eighth Amendment

4      The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S.

5  Const. amend. VIII.  The unnecessary and wanton infliction of pain constitutes cruel and unusual

6  punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986);

7  Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

8  Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy

9  and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited

10  by the Cruel and Unusual Punishments Clause."  Whitley, 475 U.S. at 319.

11      What is needed to show unnecessary and wanton infliction of pain "varies according to

12  the nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S. 1, 5 (1992)

13  (citing Whitley, 475 U.S. at 320).  In order to prevail on a claim of cruel and unusual punishment,

14  however, a prisoner must allege and prove that objectively he suffered a sufficiently serious

15  deprivation and that subjectively prison officials acted with deliberate indifference in allowing or

16  causing the deprivation to occur.  Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

17      A.  Inadequate Medical Care

18      If a prisoner's Eighth Amendment claim arises in the context of medical care, the prisoner

19  must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference

20  to serious medical needs."  Estelle, 429 U.S. at 106.  An Eighth Amendment medical claim has

21  two elements:  "the seriousness of the prisoner's medical need and the nature of the defendant's

22  response to that need."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on

23  other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

24      A medical need is serious "if the failure to treat the prisoner's condition could result in

25  further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin, 974

26  F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical need include

27  "the presence of a medical condition that significantly affects an individual's daily activities."  Id.

28  at 1059-60.  By establishing the existence of a serious medical need, a prisoner satisfies the

objective requirement for proving an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference.  See Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).  See also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference.  Estelle, 429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful.  See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not

1   give rise to a § 1983 claim.  See Snow v. McDaniel, 681 F.3d 978, 988 (9th Cir. 2012); Toguchi,

2   391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891

3   F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

4        B.   Failure to Protect

5        If a prisoner's Eighth Amendment claim arises in the context of an alleged failure to

6   protect, plaintiff must allege and prove that objectively he suffered a "sufficiently serious"

7   deprivation.  Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 298–99 (1991).  The

8   plaintiff must also show that subjectively each defendant had a culpable state of mind in allowing

9   or causing the plaintiff's deprivation to occur.  Farmer, 511 U.S. at 834.  A prison official violates

10  the Eighth Amendment "only if he knows that inmates face a substantial risk of serious harm and

11  disregards that risk by failing to take reasonable measures to abate it."  Id. at 847.  Under this

12  standard, a prison official must have a "sufficiently culpable state of mind," one of deliberate

13  indifference to the inmate's health or safety.  Id.

14       "Prison officials have a duty . . . to protect prisoners from violence at the hands of other

15  prisoners."  Farmer, 511 U.S. at 833.  "Being violently assaulted in prison is simply not 'part of

16  the penalty that criminal offenders pay for their offense against society.'"  Id. at 834.  Prison

17  officials do not, however, incur constitutional liability for every injury suffered by a prisoner at

18  the hands of another prisoner.  Id.

19       **DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND EVIDENCE**

20       Defense counsel has submitted a statement of undisputed facts ("SUDF") supported by

21  declarations signed under penalty of perjury by Dr. B. Barnett, Physician and Surgeon and Chief

22  Medical Consultant for the Receiver's Office of Legal Affairs and by E. Whitlock, Health Care

23  Appeals Coordinator at Mule Creek State Prison.  That statement of undisputed facts is also

24  supported by citations to plaintiff's medical records, his requests for health care services and

25  prison officials' responses to them, incident reports regarding a battery on plaintiff, and plaintiff's

26  inmate appeals and prison officials' responses to them.  The evidence submitted by the defendants

27  in support of the pending motion for summary judgment establishes the following.

28  /////

7

On September 17, 2009, plaintiff attended a podiatry consultation and received Prison Industrial Authority boots.  Plaintiff said the boots felt fine.  On November 25, 2009, plaintiff attended a cardiology consultation.  His medical records indicate that he had stable angina, hypertension, hyperlipidemia, benign prostatic hypertrophy, lower back pain, asthma, hypothyroidism, bipolar affective disorder, and obesity.  Plaintiff needed further evaluation with cardiac catheterization if he experienced increased chest pain that his medication did not control.  Since June 2010, doctors have prescribed plaintiff with Loperamide as needed for diarrhea and Rosuvastatin (Crestor) for his cholesterol.  (Defs.' SUDF 1-3, Barnett Decl. Ex. B at 5, 6-7, 10.)

On June 15, 2010, defendant Dr. Soltanian addressed plaintiff's complaints of back pain.  He recommended an MRI for plaintiff before referring him to a neurosurgeon.  On July 2, 2010, plaintiff underwent the MRI, and on July 14, 2010, defendant Dr. Soltanian requested a referral for plaintiff to see a neurosurgeon.  On August 3, 2010, prison officials approved defendant Dr. Soltanian's request for a referral.  (Defs.' SUDF 4-6, Barnett Decl. Ex. B at 11-13.)

On August 18, 2010, plaintiff submitted a Refusal of Examination And/Or Treatment form, stating that due to issues with prison guards he was refusing an outside urology consult.  On August 26, 2010, defendant Dr. Soltanian saw plaintiff and found that his lower back pain was stable, his hypertension was under control, and his lipids were stable.  He noted in plaintiff's medical record that plaintiff refused his urology consult last week and "doesn't want anymore outside care/appts, he will refuse all."  On September 15, 2010, plaintiff also told Dr. Tseng that he had refused a urology consult appointment on August 18, 2010.  (Defs.' SUDF 7-9, Barnett Decl. Ex. B at 14-15 & 17.)

On November 23, 2010, plaintiff reported to Physician's Assistant ("PA") Akintola that was experiencing chest pain, lower back pain, and hypertension.  PA Akintola submitted a Health Care Services Physician Request for Services form for a cardiology consultation, but on December 16, 2010, a nurse wrote on the form "pt refusing off-site cardio-eval."  On December 17, 2010, defendant Dr. Soltanian saw plaintiff and noted in his medical record that he had changed his mind regarding referrals for outside care.  On the same day, defendant Dr. Soltanian referred plaintiff for a cardiac consultation.  (Defs.' SUDF 10-11, Barnett Decl. Ex. B at 19-22.)

8

On January 7, 2011, plaintiff went to Doctors Medical Center of Modesto for the cardiac consultation.  Plaintiff underwent an angiogram, which demonstrated that he had a narrowing of coronary arteries.  On January 10, 2011, plaintiff underwent coronary by-pass surgery, also at Doctors Medical Center of Modesto.  (Defs.' SUDF 12-13, Barnett Decl. Ex. B at 27-31.)

On January 26, 2015, doctors at San Joaquin General Hospital admitted plaintiff after he complained of abdominal pain.  Plaintiff underwent surgery for a perforated diverticular abscess with contaminated mesh resulting in a sigmoid colectomy (bowel resection) and mesh excision.  On February 18, 2011, Dr. St. Claire submitted a Physician Request for Services form and noted that plaintiff was post-surgery and that Dr. Padmesh had requested a follow-up appointment with him.  On March 1, 2010, defendant Dr. Soltanian submitted a Physician Request for Services form and noted that plaintiff was post-Hartmann procedure for perforated diverticulitis and colostomy and needed an evaluation before a take-down procedure could take place.  On March 10, 2011, defendant Dr. Soltanian saw plaintiff and noted that he had seen a general surgeon on March 4, 2011, and was doing well.  (Defs.' SUDF 14-17, Barnett Decl. Ex. B at 32-39.)

On April 1, 2011, Dr. Barnett examined plaintiff.  Plaintiff complained of neck pain without lower back pain.  Dr. Barnett found that plaintiff's open-heart surgery site was healing well and that plaintiff had some discomfort (irritation) at the colostomy site.  Dr. Barnett recommended continued colostomy care.  (Defs.' SUDF 18, Barnett Decl. Ex. B at 40.)

On April 2, 2011, plaintiff submitted a Health Care Services Request form and requested an appointment to see a primary care physician for complaints of back pain.  The evaluating nurse was supposed to set a thirty-day follow-up appointment to re-assess plaintiff's case since Dr. Barnett had just seen him on April 1, 2010.  On April 12, 2011, plaintiff submitted another Health Care Services Request form and requested an appointment to obtain a lower bunk chrono, a new colostomy bag, and housing in a cell instead of the gym because plaintiff's fellow inmates had complained about the smell of his colostomy bag.  On April 18, 2011, plaintiff submitted a third Health Care Services Request form and requested renewal of his chronos and a bed move, and complained of lower back pain and heart problems.  The responding nurse indicated that an appointment had been scheduled for him.  (Defs.' SUDF 19-21, Barnett Decl. Ex. B at 41-43.)

On April 27, 2011, plaintiff received treatment for chest pain at Sutter Amador Hospital. He underwent cardiac catheterization with the insertion of stents.  Doctors discharged him on the following day.  On May 10, 2011, plaintiff complained of chest pain again.  It did not improve with nitroglycerin, so PA Akintola sent plaintiff for further chest pain evaluation at the Triage and Treatment Area ("TTA").  (Defs.' SUDF 22-23, Barnett Decl. Ex. B at 44-46, 49.)

On June 3, 2011, plaintiff received an evaluation at San Joaquin General Hospital and was doing well.  In two months, doctors could consider reversing plaintiff's colostomy.  On June 14, 2011, defendant Dr. Naseer requested an off-site gastrointestinal ("GI") consultation for a colon examination for plaintiff as needed prior to any colostomy reversal procedure.  (Defs.' SUDF 24-25, Barnett Decl. Ex. B at 51-52.)

On June 25, 2011, one of plaintiff's fellow inmates attacked him.  On June 26, 2011, plaintiff received medical treatment at Sutter Amador Hospital for a nasal fracture, contusion, and facial laceration.  On June 27, 2011, defendant Dr. Naseer examined plaintiff to follow-up on his hypertension, asthma, Chronic Obstructive Pulmonary Disease ("COPD"), Coronary Artery Disease, and GI consultation and noted that plaintiff was awaiting surgery on his colon.  A July 18, 2011, San Joaquin General Hospital progress note indicates that plaintiff needed medical clearance before reversal of his colostomy.  (Defs.' SUDF 26-28, Barnett Decl. Ex. B at 53-61.)

On July 27, 2011, Nurse Clark-Barlow examined plaintiff for complaints of lower back pain, and noted that plaintiff did not want to see a neurosurgeon until the after doctors reversed his colostomy.  Nurse Clark-Barlow submitted a Request for Services to obtain medical clearance from cardiology before scheduling plaintiff's colostomy surgery.  On September 22, 2011, a chest x-ray revealed that plaintiff had mild COPD.  (Defs.' SUDF 29-31, Barnett Decl. Ex. B at 62-63.)

On December 7, 2011, the attending doctor at Mule Creek State Prison's Special Care Clinic recommended delaying plaintiff's colostomy reversal until after April 2012, because plaintiff needed to stay on Plavix for a specified period of time.  On December 15, 2011, after plaintiff complained of abdominal pain and diarrhea, prison officials sent him to San Joaquin General Hospital.  A CT scan showed plaintiff had gallstones.  (Defs.' SUDF 32-33, Barnett Decl. Ex. B at 71-74.)

On January 13, 2012, plaintiff transferred from Mule Creek State Prison to California Institution for Men.  On February 1, 2012, Dr. Torres at California Institution for Men found that plaintiff could not undergo a colostomy reversal because he was at high risk for surgery due to cardiac issues.  (Defs.' SUDF 34-35, Barnett Decl. Ex. B at 77-91.)

On July 2, 2012, plaintiff had a cardiac consultation at Riverside County Regional Medical Center.  During the consultation, Dr. Krishnan observed that plaintiff's hypertension was poorly controlled because he had not been taking his prescribed medications.  By July 19, 2012, plaintiff's hypertension was well-controlled, fair, and stable, and his colostomy reversal was scheduled for August 8, 2012.  (Defs.' SUDF 36-37, Barnett Decl. Ex. B at 92-99.)

According to Dr. Barnett, defendant Dr. Soltanian did not make any false entries in plaintiff's medical records, and his comments that plaintiff had refused outside medical treatment are corroborated by plaintiff's own statement dated August 18, 2010, Dr. Tseng's note dated September 15, 2010, and various nursing notes dated around the same period.  In addition, plaintiff's cardiac artery disease appeared well-controlled with medication until November 23, 2010.  At that point, plaintiff complained of chest pain, and defendant Dr. Soltanian referred plaintiff for a cardiac consultation.  (Defs.' SUDF 38-39, Barnett Decl. Ex. B. at 14-15, 16-18, 20 & 22.)

Plaintiff's claim that he suffered painful heart attacks brought on by defendant Dr. Soltanian's conduct is not supported by any evidence in the medical record.  Plaintiff's complaints of "heart attacks" appear to be episodes of chest pain, which resolved after plaintiff took medication.  There are no entries in the medical record that plaintiff experienced elevated troponin levels or electrocardiograph changes, which would be consistent with an actual myocardial infarction.  (Defs.' SUDF 40, Barnett Decl.)

According to Dr. Barnett, plaintiff's heart surgery on January 26, 2011, and the insertion of stents plaintiff had on April 28, 2011, were not the result of any lapses in medical care, but rather, were caused by plaintiff's cardiac artery disease, which includes a prior history of myocardial infarction, surgery for atherosclerosis in his aorta, a long history of tobacco and alcohol abuse, obesity, and documented hyperlipidemia.  (Defs.' SUDF 41-42, Barnett Decl.)

Turning now to plaintiff's other medical conditions, defendant Dr. Soltanian and defendant Dr. Naseer did not ignore plaintiff's complaints of diarrhea.  Doctors had prescribed him Loperamide to control his diarrhea since at least June 2010.  Plaintiff also received treatment and medication for constipation.  (Defs.' SUDF 43, Barnett Decl., Ex. B at 10, 72.)

Plaintiff did not inform defendant Dr. Naseer of any condition for which he needed a referral to a neurosurgeon.  When plaintiff submitted a complaint of lower back pain on July 27, 2011, he specifically stated that he did not want to be referred to a neurosurgeon until after his colostomy reversal.  The cardiologist at Mule Creek State Prison wrote explicit instructions not to perform that surgery until after April 2012.  By April 2012, prison officials had transferred plaintiff out of Mule Creek State Prison.  (Defs.' SUDF 45, Barnett Decl., Ex. B at 60-62.)

According to Dr. Barnett, plaintiff also received appropriate care for his feet from defendant Dr. Naseer.  In addition, defendant Dr. Naseer did not refuse to attempt to arrange for a timely reversal of plaintiff's colostomy and did not refuse to transfer plaintiff to cell housing.  Custody staff, not medical staff, make inmate transfer and housing decisions.  A medical hold or medical transfer would have been inappropriate because plaintiff was receiving adequate medical treatment at Mule Creek State Prison.  Even if defendant Dr. Naseer was authorized to transfer plaintiff, plaintiff did not submit documentation indicating that he was in danger of being assaulted by fellow inmates because of the smell from his colostomy bag, so defendant Dr. Naseer was not on notice that he needed to take steps to arrange a transfer.  (Defs.' SUDF 46-49, Barnett Decl. at 13, Ex. B at 60-76.)

According to Dr. Barnett, defendants Dr. Soltanian and Dr. Naseer provided medical care that consistently met or exceeded applicable community standards of care for best practice.  (Defs.' SUDF 50, Barnett Decl. at 15.)

Finally, according to Health Care Appeals Coordinator Whitlock, plaintiff did not submit a CDCR form 602 HC Patient/Inmate Health Care Appeal alleging that defendant Dr. Soltanian failed to provide him with proper medical care or that defendant Dr. Soltanian was deliberately indifferent to plaintiff's serious medical needs.  (Defs.' SUDF 51, Whitlock Decl.)

////

**ANALYSIS**

As noted above, on April 28, 2015, defendants filed the pending motion for summary judgment on the grounds that: (1) defendants are not liable for deliberate indifference to plaintiff's medical needs; (2) defendant Dr. Naseer is not liable for failing to protect plaintiff; (3) plaintiff failed to exhaust his available administrative remedies with respect to his claims against defendant Dr. Soltanian; and (4) defendants are entitled to qualified immunity.

For the reasons discussed below, the court concludes that the defendant doctors are entitled to summary judgment on the merits of plaintiff's Eighth Amendment claims. The court declines to reach defendants' alternative arguments based on exhaustion and qualified immunity.

I.    Plaintiff's Eighth Amendment Medical Deliberate Indifference Claims

A.    Deliberate Indifference Claim Against Dr. Soltanian

First, the court will address the argument that defendant Dr. Soltanian is entitled to summary judgment on plaintiff's Eighth Amendment deliberate indifference claim in connection with plaintiff's cardiac care.[1]  (Defs.' Mem. of P. & A. at 6-9.)  As noted above, in plaintiff's third amended complaint, plaintiff claims that defendant Dr. Soltanian violated his rights under the Eighth Amendment when, unbeknownst to plaintiff, the defendant wrote in plaintiff's medical file that he refuses all outside medical treatment.  Plaintiff alleges that he suffered "many heart attacks" and required emergency heart surgery in January 2011, because of defendant Dr. Soltanian's conduct.  (Third Am. Compl. at 3-4.)

---

[1]  The parties do not dispute, and the court finds based upon the evidence presented by the parties in connection with the pending motion for summary judgment, that a reasonable juror could conclude that plaintiff's cardiac medical condition constitutes an objective, serious medical need. See McGuckin, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."); see also Canell v. Bradshaw, 840 F. Supp. 1382, 1393 (D. Or. 1993) (the Eighth Amendment duty to provide medical care applies "to medical conditions that may result in pain and suffering which serve no legitimate penological purpose.").  Specifically, plaintiff's well-documented medical history, as well as the observations and treatment recommendations by plaintiff's treating physicians and prison officials compel the conclusion that plaintiff's cardiac medical condition, if left untreated, could result in "further significant injury" and the "unnecessary and wanton infliction of pain." McGuckin, 974 F.2d at 1059.

13

1      Based on the evidence defendant Dr. Soltanian has submitted on summary judgment, the undersigned finds that the defendant has borne his initial burden of demonstrating that there is no genuine issue of material fact with respect to the adequacy of the medical care he provided to plaintiff in connection with the plaintiff's cardiac needs.  Specifically, as detailed above, defendants' evidence in this case demonstrates that on August 18, 2010, plaintiff submitted a Refusal of Examination And/Or Treatment form for a urology consultation.  (Barnett Decl. Ex. B at 14.)  On the form plaintiff acknowledged in writing the repercussions of his decision, including but not limited to, a delayed diagnosis and delayed treatment.  (Id.)  According to plaintiff's medical records, one week later, plaintiff also told defendant Dr. Soltanian that he did not want any outside care or appointments and would refuse all of them.  (Id. at 15.)  Defendant Dr. Soltanian left a message with a nurse to cancel all of plaintiff's outside appointments and referrals.  (Id.)  Defendant Dr. Soltanian then conducted an assessment of plaintiff's chronic conditions and scheduled plaintiff for a follow-up visit in ninety (90) days.  (Id.)  According to plaintiff's medical records, approximately four months later, on December 17, 2010, plaintiff changed his mind about seeing outside specialists, and defendant Dr. Soltanian referred him for outside care, specifically a cardiac consultation.  Prison officials approved the referral on December 20, 2010, and the consultation took place on January 7, 2011, at Doctors Medical Center of Modesto.  (Barnett Decl. Ex. B. at 24-28.)

      Given the evidence submitted by defendant Dr. Soltanian in support of the pending motion, the burden shifts to plaintiff to establish the existence of a genuine issue of material fact with respect to his inadequate medical care claim.  The court has reviewed plaintiff's verified complaint and his opposition to defendants' pending motion.  In considering defendants' motion for summary judgment with respect to plaintiff's deliberate indifference claim, the court is required to believe plaintiff's evidence and draw all reasonable inferences from the facts before the court in his favor.  Drawing all reasonable inferences from that evidence in plaintiff's favor, the court finds that plaintiff has failed to submit sufficient evidence to create a genuine issue of material fact with respect to his claim that defendant Dr. Soltanian was deliberately indifferent to his serious medical needs.

1       Specifically, in opposition to defendants' motion for summary judgment, plaintiff argues

2   that he never refused all outside medical appointments and only refused outside appointments if

3   one particular officer was in charge of transporting him to the appointment.  (Pl.'s Opp'n to

4   Defs.' Mot. for Summ. J. at 2-3, 5, Pl.'s Decl. to Oppose B. Barnett's Decl. (hereinafter "Pl.'s

5   Decl.") at 3 & 9.)  Even assuming plaintiff's version of the facts to be true, however, plaintiff has

6   not submitted any evidence to indicate that defendant Dr. Soltanian deliberately ignored, delayed,

7   or failed to respond to plaintiff's medical needs.  Rather, at most, plaintiff's version of events

8   suggests that defendant Dr. Soltanian misinterpreted the breadth of plaintiff's refusal to attend

9   outside medical appointments.

10      Insofar as defendant Dr. Soltanian's treatment of plaintiff could be deemed inadequate or

11  ineffective, it could constitute negligence or medical malpractice at most but not deliberate

12  indifference.  Of course, it is well established that "[m]ere 'indifference,' 'negligence,' or

13  'medical malpractice' will not support this cause of action."  Broughton, 622 F.2d at 460 (citing

14  Estelle, 429 U.S. at 105-06).  See also Toguchi, 391 F.3d at 1057 ("Mere negligence in

15  diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth

16  Amendment rights.").  That defendant Dr. Soltanian referred plaintiff for a cardiac consultation as

17  soon as he learned that plaintiff desired outside care in December 2010, further militates against

18  any finding that defendant Dr. Soltanian purposely ignored, delayed, or failed to respond to

19  plaintiff's medical needs.  Wood, 900 F.2d at 1334 ("In determining deliberate indifference, we

20  scrutinize the particular facts and look for substantial indifference in the individual case,

21  indicating more than mere negligence or isolated occurrences of neglect.").

22      Plaintiff also argues in his opposition to defendants' motion for summary judgment that,

23  as a result of defendant Dr. Soltanian's notes in his medical records, he needed two emergency

24  surgeries.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 3, Pl.'s Decl. at 3-4.)  In this regard,

25  plaintiff appears to argue that defendant Dr. Soltanian's conduct delayed his medical care.  Even

26  assuming plaintiff's version of the facts to be true, however, plaintiff has not come forward with

27  any evidence to show that the delay he experienced in receiving outside care resulted in serious

28  harm.  To establish a claim of deliberate indifference arising from delay in providing care, a

15

1  plaintiff must show that the delay was harmful.  Hallett, 296 F.3d at 745–46 (delay in providing

2  care does not constitute deliberate indifference unless inmate suffers significant harm as a result

3  of the delay); Berry, 39 F.3d at 1057 (to establish deliberate indifference based on a delay in

4  medical treatment, plaintiff must show the delay itself caused harm); Wood, 900 F.2d 1335 (delay

5  of more than one month in referring a prisoner to an orthopedic specialist for a free-floating pin in

6  his shoulder during which time the prisoner complained of pain was not actionable because no

7  substantial harm resulted); Velasquez v. Barrios, No. 08–56634, 2012 WL 2060660 at *1 (9th

8  Cir. 2012) ("[W]hen, as here, a claim is based on a delay in treatment, such a delay only rises to a

9  constitutional violation if it caused the prisoner 'substantial harm.'") (quoting Wood, 900 F.2d at

10 1335)[2]; Cramer v. Target Corp., No. 1:08–cv–01693–SKO, 2011 WL 5873401 at * 18 (E.D. Cal.

11 Nov. 22, 2011) ("The question for purposes of Plaintiff's claim, however, is not whether the

12 injuries he sustained on March 3, 2008, have caused him any further harm, but whether the *delay*

13 in treatment caused him any further harm. It is the *delay* in treatment that is the essence of

14 Plaintiff's civil rights claim for deliberate indifference, not the harm he suffered as a result of his

15 injury in and of itself.").

16        In this case, as an initial matter, Dr. Barnett's testimony that plaintiff's cardiac artery

17 disease appeared well controlled with medication until November 23, 2010 (when plaintiff

18 complained of chest pain and defendant Dr. Soltanian referred plaintiff for his cardiac

19 consultation) remains unrefuted.  (Barnett Decl. at 5.)  In addition, neither plaintiff's medical

20 records from his cardiac catheterization on January 7, 2011, nor his bypass surgery on January 10,

21 2011, indicate that the procedures were emergent or should have taken place sooner.  (Id. Ex. B at

22 27-31.)  Plaintiff also has not submitted any evidence to indicate that if he had received outside

23 care sooner he could have avoided his cardiac catheterization or bypass surgery or any of the

24 subsequent procedures he has undergone related to his pre-existing coronary artery disease.  Thus,

25 plaintiff's evidence does not show that any delay he experienced in receiving outside care caused

26 him harm as required to defeat defendants' summary judgment motion.

27

---

28  [2]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

In sum, based on the evidence presented in connection with the pending motion for summary judgment, the court finds that no reasonable juror could conclude that defendant Dr. Soltanian was deliberately indifferent to plaintiff's serious medical needs and therefore violated plaintiff's rights under the Eighth Amendment.  Accordingly, the undersigned will recommend granting defendants' motion for summary judgment on this claim against defendant Dr. Soltanian.

B.  Deliberate Indifference Claim Against Dr. Naseer

The court now turns to the argument that defendant Dr. Naseer is entitled to summary judgment on plaintiff's Eighth Amendment deliberate indifference claim.  (Defs.' Mem. of P. & A. at 6-9.)  In plaintiff's third amended complaint, plaintiff alleges that defendant Dr. Naseer became his primary care physician in 2011, after plaintiff's cardiac catheterization and bypass surgery.  He claims that defendant Dr. Naseer violated his rights under the Eighth Amendment when he refused to send plaintiff to see an outside cardiologist.  Plaintiff claims that he went "man down" when he knew the defendant was not there to treat him and ended up in the hospital for emergency heart surgery yet again.  (Third Am. Compl. at 6-7.)

Based on the evidence defendant Dr. Naseer has submitted on summary judgment, the undersigned finds that the defendant has borne the initial burden of demonstrating that there is no genuine issue of material fact with respect to the adequacy of the medical care defendant Dr. Naseer provided to plaintiff in connection with the plaintiff's cardiac needs.  Specifically, as detailed above, defendants' evidence in this case demonstrates that on April 18, 2011, plaintiff submitted a Health Care Services Request Form.  (Barnett Decl. Ex. B. at 43.)  On the form, plaintiff indicated that he thought he was having heart problems and that one of his "new valves" was not working properly.  (Id.)  He requested to see a doctor as soon as possible.  (Id.)  On April 20, 2011, a nurse Santos responded that she would schedule plaintiff for an appointment to see his primary care physician.  (Id.)  Before an appointment could take place, however, plaintiff went "man down" that same week, and received treatment at Sutter Amador Hospital with cardiac catheterization and the insertion of stents.  (Id. at 44-46.)  Defendant Dr. Naseer did not have an opportunity to see or treat plaintiff in connection with his Health Care Services Request Form.  (Id.)

1    Given the evidence submitted by defendant Dr. Naseer in support of the pending motion

2    for summary judgment, the burden shifts to plaintiff to establish the existence of a genuine issue

3    of material fact with respect to his inadequate medical care claim.  Again, the court has reviewed

4    plaintiff's verified complaint and his opposition to defendants' pending motion.  In considering

5    defendants' motion for summary judgment with respect to plaintiff's deliberate indifference

6    claim, the court is required to believe plaintiff's evidence and draw all reasonable inferences from

7    the facts before the court in his favor.  Drawing all reasonable inferences from that evidence in

8    plaintiff's favor, the court finds that plaintiff has failed to submit sufficient evidence to create a

9    genuine issue of material fact with respect to his claim that defendant Dr. Naseer was deliberately

10   indifferent to his serious medical needs.

11    Specifically, in opposition to defendants' pending motion for summary judgment, plaintiff

12   does not dispute defendants' evidence showing that defendant Dr. Naseer only saw plaintiff on

13   two occasions, but he questions why defendant Dr. Naseer did not see him after he submitted his

14   Health Care Services Request Form on April 20, 2011.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J.

15   at 6-7, Pl.'s Decl. at 5-6 & Ex. J.)  Plaintiff argues that "for some reason" defendant Dr. Naseer

16   would not allow him to see a cardiologist.  (Pl.'s Decl. at 5.)  Plaintiff has not, however,

17   submitted any evidence to indicate that defendant Dr. Naseer deliberately ignored, delayed, or

18   failed to respond to plaintiff's medical needs.  For example, with respect to plaintiff's Health Care

19   Services Request Form on April 20, 2011, plaintiff has submitted no evidence to indicate that

20   defendant Dr. Naseer had received the form from Nurse Santos (let alone ignored it) before

21   plaintiff went "man down" that same week and received treatment at Sutter Amador Hospital.

22   Nor has plaintiff submitted any evidence to indicate that had he received an earlier referral for

23   cardiac care he would have avoided cardiac catheterization and the insertion of stents.  In fact, Dr.

24   Barnett's testimony that plaintiff's cardiac procedures were caused by plaintiff's underlying

25   coronary artery disease rather than any lapse in medical care remains unrefuted.  (Barnett Decl. at

26   6.)

27    In sum, based on the evidence presented in connection with the pending motion for

28   summary judgment, the court finds that no reasonable juror could conclude that defendant Dr.

1   Naseer was deliberately indifferent to plaintiff's serious medical needs and therefore violated his

2   rights under the Eighth Amendment.  Accordingly, the undersigned will recommend granting

3   defendants' motion for summary judgment on this claim.

4            C.   Other Claims Related To Medical Care

5            Finally, the court will now turn to the remaining arguments that defendants Dr. Soltanian

6   and Dr. Naseer are entitled to summary judgment on plaintiff's claims related to his medical care

7   for his diarrhea, colostomy bag, lower back pain, and feet.  (Defs.' Mem. of P. & A. at 9-12.)  In

8   his third amended complaint, plaintiff alleges that defendant Dr. Soltanian said plaintiff's diarrhea

9   was under control when the medication plaintiff was taking had only helped the condition.  In

10  addition, plaintiff alleges that he had to wear a colostomy bag for one and one-half years.

11  Plaintiff also alleges that he asked defendant Dr. Naseer for updates on his back many times and

12  to send him to a foot doctor for new shoes because he had a hole in one of his shoes.  (Third Am.

13  Compl. at 4 & 6-7.)

14          As an initial matter, the court finds that plaintiff's vague and conclusory allegations

15  concerning his medical care for his diarrhea, colostomy bag, lower back pain, and feet fail to state

16  a cognizable claim for relief and should be dismissed.  28 U.S.C. § 1915A(b)(1) & (2) (court must

17  dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous

18  or malicious," that fail to state a claim upon which relief may be granted).  Specifically, plaintiff

19  has not alleged sufficient facts to suggest that defendant Dr. Soltanian or defendant Dr. Naseer's

20  actions rose to the level of "deliberate indifference" with respect to these conditions.  Estelle, 429

21  U.S. at 106.

22          For example, with respect to plaintiff's diarrhea, plaintiff appears to complain that

23  defendant Dr. Soltanian's treatment only helped his diarrhea but did not stop it completely.  At

24  most, plaintiff has asserted a claim for negligence and/or a claim based on a mere difference of

25  opinion as to the appropriate course of treatment for his diarrhea, neither of which support and

26  Eighth Amendment cause of action.  See Snow, 681 F.3d at 988; Broughton, 622 F.2d at 460.

27  With respect to his colostomy bag, insofar as plaintiff alleges he experienced a delay in his

28  colostomy reversal, he has not identified which defendant was involved with the delay or how the

1    defendant caused the delay.  There can be no liability under 42 U.S.C. § 1983 unless there is

2    some affirmative link or connection between a defendant's actions and the claimed deprivation.

3    Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980);

4    Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Finally, with respect to plaintiff's back and

5    foot care, plaintiff's allegations are so vague and conclusory that it is not clear whether plaintiff's

6    conditions constituted "serious medical needs" or how the defendants were involved in the denial

7    of his medical care for these medical needs.  Accordingly, to the extent that plaintiff was

8    attempting to assert Eighth Amendment claims based on these bare assertions, the court will

9    recommend dismissing these claims for failure to state a claim.

10          Moreover, even assuming for the sake of argument that plaintiff's allegations concerning

11   these medical conditions state a cognizable claim for relief, based on the evidence defendants

12   have submitted on summary judgment, the undersigned finds that defendants have borne their

13   initial burden of demonstrating that there is no genuine issue of material fact with respect to the

14   adequacy of the medical care they provided to plaintiff.  Specifically, as detailed above,

15   defendants' evidence in this case demonstrates that since June 2010, doctors have prescribed

16   plaintiff with 2 mg of Loperamide as needed for diarrhea, which plaintiff acknowledges helped

17   the condition.  (Barnett Decl. Ex. B. at 10.)  With respect to plaintiff's colostomy bag, insofar as

18   plaintiff complains about the length of time he had to wear the colostomy bag, defendants'

19   evidence demonstrates that plaintiff needed cardiac clearance before the reversal procedure could

20   take place, and he did not receive that clearance until after he had transferred to California

21   Institution for Men.  (Id. Ex. B. at 61-62, 71, 78-79 & 99.)  With respect to his back problems,

22   plaintiff submitted a complaint of chronic lower back pain on July 27, 2011, when defendant Dr.

23   Naseer was his primary care physician, but plaintiff specifically stated that he did not want a

24   referral to a neurosurgeon until after his colostomy reversal, which again could not take place

25   until after plaintiff had left Mule Creek State Prison and was no longer under defendant Dr.

26   Naseer's care.  (Id. Ex. B. at 62 & 99.)  Finally, with respect to plaintiff's foot care, in 2009,

27   plaintiff attended a podiatry consult and received Prison Industrial Authority boots.  Plaintiff said

28   /////

1   the boots felt fine.  Thereafter, according to Dr. Barnett, plaintiff also received appropriate foot

2   care.  (Id. at 13, Ex. B at 5.)

3        Given the evidence submitted by defendants in support of the pending motion for

4   summary judgment, the burden shifts to plaintiff to establish the existence of a genuine issue of

5   material fact with respect to any of these inadequate medical care claims.  The court has reviewed

6   plaintiff's verified complaint and his opposition to defendants' pending motion.  As discussed

7   above, in considering defendants' motion for summary judgment with respect to plaintiff's

8   deliberate indifference claims, the court is required to believe plaintiff's evidence and draw all

9   reasonable inferences from the facts before the court in his favor.  Drawing all reasonable

10  inferences from that evidence in plaintiff's favor, the court finds that plaintiff has failed to submit

11  sufficient evidence to create a genuine issue of material fact with respect to his claim that

12  defendants were deliberately indifferent to plaintiff's serious medical needs, if any.

13       Specifically, in opposition to the pending motion, plaintiff argues that with respect to his

14  diarrhea he had to call his doctor outside of the prison to find out what medication he needed.

15  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 8.)  Plaintiff told defendant Dr. Soltanian about the

16  medication, and he ordered it for plaintiff.  (Id.)  Nevertheless, plaintiff contends that he still

17  experienced diarrhea and notes that according to unnamed medical staff "off-site" plaintiff could

18  have avoided his intestine surgery if a doctor had addressed his diarrhea a year earlier.  (Id. at 9.)

19  With respect to his colostomy bag, plaintiff does not specifically address this issue in his

20  opposition papers but generally complains that every time he needed surgery or to see a specialist

21  no matter how much pain he was in he had to go around his primary care physician.  (Id. at 9-10.)

22  With respect to his back, plaintiff clarifies that "he never said anything about my back in this

23  case" but notes that he still has not seen a neurosurgeon.  (Id. at 8.)  With respect to his shoes,

24  plaintiff contends that he cannot wear PIA shoes and that his shoes come from a store not from a

25  prison.  (Id. at 9.)  According to plaintiff, defendant Dr. Naseer told him his shoes were too new,

26  so he would not approve plaintiff for a replacement pair or to see a podiatrist.  (Pl.'s Decl. at 8.)

27       Once more, plaintiff has not submitted any evidence to indicate that defendant Dr.

28  Soltanian or defendant Dr. Naseer deliberately ignored, delayed, or failed to respond to plaintiff's

1    medical needs.  Based on the record in this case, at most, plaintiff has alleged a difference of

2    opinion between him and the defendant doctors when it comes to his medical care for his

3    diarrhea, colostomy bag, lower back pain, and feet.  As noted above, it is well established that a

4    mere difference of opinion between a prisoner and prison medical personnel as to the proper

5    course of medical care does not give rise to a cognizable § 1983 claim.  See Snow, 681 F.3d at

6    988; Jackson, 90 F.3d at 332; Sanchez, 891 F.2d at 242; Franklin, 662 F.2d at 1344; see also

7    Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to

8    the appropriate course of care does not create a triable issue of fact because he has not shown that

9    he has any medical training or expertise upon which to base such an opinion.").  To establish that

10   a difference of medical opinion as to the appropriate course of treatment amounted to deliberate

11   indifference, plaintiff must "show that the course of treatment the doctors chose was medically

12   unacceptable under the circumstances" and that "they chose this course in conscious disregard of

13   an excessive risk to [the prisoner's] health."  Jackson, 90 F.3d at 332.  See also Toguchi, 391 F.3d

14   at 1058.

15        In this case, plaintiff has not come forward with any competent evidence demonstrating

16   that the course of treatment provided by defendants Dr. Soltanian and Dr. Naseer in connection

17   with plaintiff's diarrhea, colostomy bag, lower back pain, and feet was medically unacceptable

18   under the circumstances.  Plaintiff also has not come forward with any competent evidence

19   demonstrating that defendants chose or approved of plaintiff's course of treatment in conscious

20   disregard of an excessive risk to his health.  By merely expressing his opinion in this regard,

21   plaintiff fails to create a genuine issue of material fact.  See, e.g., Hansen v. United States, 7 F.3d

22   137, 138 (9th Cir. 1993) ("When the non-moving party relies on its own affidavits to oppose

23   summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create

24   an issue of material fact."); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support

25   or oppose a motion must be made on personal knowledge, set out facts that would be admissible

26   in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

27        In sum, the undersigned finds and that plaintiff's third amended complaint fails to state an

28   Eighth Amendment claim based on defendants' treatment of his diarrhea, colostomy bag, lower

back pain, and feet.  Moreover, based on the evidence presented in connection with the pending

motion for summary judgment, the court finds that no reasonable juror could conclude that the

defendant doctors were deliberately indifferent to these medical needs.  Accordingly, the

undersigned will recommend dismissal of these claims and granting defendants' motion for

summary judgment on these claims.

II.     Plaintiff's Eighth Amendment Failure to Protect Claim

The court will now address the argument that defendant Dr. Naseer is entitled to summary

judgment on plaintiff's Eighth Amendment failure to protect claim.  In his third amended

complaint, plaintiff alleges that inmates were harassing him because of the smell of his colostomy

bag, but defendant Dr. Naseer refused to move him because he did not believe that inmates would

harm plaintiff over the smell.  When plaintiff returned to the gym after a stay in the hospital,

however, a fellow inmate assaulted him purportedly because his colostomy bag smelled bad.

(Third Am. Compl. at 7.)

Based on the evidence defendant Dr. Naseer has submitted on summary judgment, the

undersigned finds that the defendant has borne the initial burden of demonstrating that there is no

genuine issue of material fact with respect to the adequacy of protection defendant Dr. Naseer

provided to plaintiff in connection with his housing assignment.  Specifically, as detailed above,

defendants' evidence demonstrates that there is no indication that defendant Dr. Naseer was

aware of plaintiff's request for a transfer or that he refused to transfer plaintiff.  (Barnett Decl. at

13.)  Moreover, defendant Dr. Naseer lacked the authority to transfer plaintiff to a cell because

custody staff and not medical staff makes decisions concerning cell moves and transfers.  (Id.)  In

addition, requesting a medical hold or medical transfer for plaintiff would not have been

appropriate because plaintiff would have received the same medical care at another institution

that he was receiving at Mule Creek State Prison.  (Id.)

Given the evidence submitted by defendant Dr. Naseer in support of the pending motion

for summary judgment, the burden shifts to plaintiff to establish the existence of a genuine issue

of material fact with respect to his failure to protect claim.  The court has reviewed plaintiff's

verified complaint and his opposition to defendants' pending motion.  In considering defendants'

1   motion for summary judgment with respect to plaintiff's failure to protect claim, the court is

2   required to believe plaintiff's evidence and draw all reasonable inferences from the facts before

3   the court in his favor.  Drawing all reasonable inferences from that evidence in plaintiff's favor,

4   the court finds that plaintiff has failed to submit sufficient evidence to create a genuine issue of

5   material fact with respect to his claim that defendant Dr. Naseer was deliberately indifferent to his

6   health and safety needs.

7        Specifically, in opposition to defendants' pending motion, plaintiff argues that inmates

8   would not have attacked him had defendant Dr. Naseer transferred him for medical reasons as he

9   had requested.  (Pl.'s Decl. at 5.)  Plaintiff declares that on April 12, 2011, he asked prison

10   officials to move him to a cell and out of the gym.  (Id.)  At a hearing concerning plaintiff's

11   request, defendant Dr. Naseer allegedly stated that plaintiff's waste bag smelled bad but no

12   inmate would start a fight over it.  He also stated that there was no reason to move plaintiff to a

13   single cell.  (Id.)  Approximately two days later, plaintiff contends he got "beat down" because of

14   the smell of his colostomy bag.  (Id.)

15        Even assuming plaintiff's version of the facts to be true, plaintiff has not submitted

16   evidence to indicate that defendant Dr. Naseer knew of and disregarded an excessive risk to

17   plaintiff's health and safety.  Farmer, 511 U.S. at 837.  See also Meachum v. Fano, 427 U.S. 215,

18   224 (1976) (prisoners have no constitutional right to a particular housing assignment).  As an

19   initial matter, plaintiff has not submitted evidence to show that there was any specific threat

20   against him that rose above a speculative level at the time he asked to transfer from the gym to a

21   cell.  For example, in the Reasonable Modification or Accommodation Request he submitted to

22   prison officials he states that there are 159 inmates in the gym and for "there [sic] safety and

23   health he should be moved."  (Defs.' Reply Ex. G.)  He further states that "For my health and

24   safety I need to get off the tri-bunks."  (Id.)  Nowhere on his form (or in his third amended

25   complaint or opposition to defendants' motion for summary judgment) does plaintiff provide any

26   specifics about inmates threatening to attack him based on the smell of his colostomy bag.  Under

27   the deliberate indifference standard, a prison official must have more than a "mere suspicion" that

28   an attack will occur.  See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir.1986).  "[P]rison

1   officials who lacked knowledge of a risk cannot be said to have inflicted punishment." See

2   Farmer, 511 U.S. at 844.

3       In addition, the court notes that in reply to plaintiff's opposition, defense counsel has

4   submitted documentation calling into doubt plaintiff's version of the facts.  In response to

5   plaintiff's Reasonable Modification or Accommodation Request, Correctional Counselor Lamb

6   interviewed plaintiff and denied his request for cell housing.  (Defs.' Reply Ex. G.)  On the form

7   denying plaintiff's Reasonable Modification or Accommodation Request there is a space that

8   states:  "If disposition is based upon information provided by other staff or other resources,

9   specify the resource and the information provided."  (Id.)  There is no notation that defendant Dr.

10  Naseer was present or otherwise involved during plaintiff's interview with Correctional Counsel

11  Lamb or that Lamb relied on defendant Dr. Naseer in making his decision on plaintiff's housing.

12  (Id.)  In addition, both parties have submitted copies of the crime incident report detailing the

13  circumstances of the attack on plaintiff.  Nowhere in that report is the smell of plaintiff's

14  colostomy bag mentioned as the purported cause of the fight between the inmates.

15      Finally, and most significantly, plaintiff has not submitted any evidence to refute

16  defendants' evidence that medical staff does not have control over housing decisions for inmates.

17  (Barnett Decl. at 13.)  Custody staff places inmates in housing according to safety factors that

18  usually do not involve medical considerations.  (Id.)  Although physicians may request a medical

19  hold to keep certain inmates at the same location based on their medical conditions, only on rare

20  occasions do physicians recommend transfer within a prison or to another prison.  Physicians

21  make such recommendations when medical services are unavailable to the inmate at his current

22  housing.  (Id.)  There was no need to transfer plaintiff for medical care elsewhere.  (Id.)

23      In sum, based on the evidence presented in connection with the pending motion for

24  summary judgment, the court finds that no reasonable juror could conclude that defendant Dr.

25  Naseer was deliberately indifferent to plaintiff's health and safety and therefore violated his rights

26  under the Eighth Amendment.  Accordingly, the undersigned will recommend granting

27  /////

28  /////

1  defendants' motion for summary judgment on plaintiff's failure to protect claim, as well.[3]

2  **OTHER MATTERS**

3    On January 11, 2016, plaintiff filed a motion to transfer this case to the United States

4  District Court for the Central District of California because in August 2016, the California

5  Department of Corrections ("CDCR") will release him on parole in San Bernardino, California.

6  Plaintiff is advised that, even if CDCR paroles plaintiff to an area embraced by the Central

7  District of California, under the federal venue statute, venue for this cause of action is still proper

8  in this court.  28 U.S.C. § 1391(b) (civil action "may be brought in (1) a judicial district in which

9  any defendant resides, if all defendants are residents of the State in which the district is located,

10  (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim

11  occurred, or a substantial part of property that is the subject of the action is situated, or (3) if there

12  is no district in which an action may otherwise be brought as provided in this action, any judicial

13  district in which any defendant is subject to the court's personal jurisdiction with respect to such

14  action.").  Accordingly the court will deny plaintiff's motion.

15  **CONCLUSION**

16    Accordingly, IT IS HEREBY ORDERED:

17    1.  Plaintiff's motion to transfer this case to the Central District of California (Doc. No.

18  76) is denied; and

19    2.  The Clerk of the Court is directed to randomly assign a United States District Judge to

20  this action.

21    IT IS HEREBY RECOMMENDED that:

22    1.  Defendants' motion for summary judgment (Doc. No. 67) be granted for the reasons

23  discussed herein;

24  /////

25

26  ───────────────────
[3]  In light of the findings and recommendation herein, recommending that defendants' motion for
summary judgment be granted on the merits of all of plaintiff's Eighth Amendment claims, the

27  undersigned declines to reach defendants' alternative arguments for summary judgment based on
plaintiff's alleged failure to exhaust administrative remedies before filing suit as required and

28  based on the affirmative defense of qualified immunity.

2. Plaintiff's Eighth Amendment claims based on defendants' treatment of his diarrhea, colostomy bag, lower back pain, and feet be dismissed for failure to state a claim; and

3. This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 21, 2016

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE